**Edwin J. KRYSTOF, Sr., Plaintiff,**

v.

**HYATT CORPORATION, a corporation d/b/a Hyatt Regency Chicago, Defendant.**

No. 92 C 4235.

United States District Court, N.D. Illinois, E.D.

June 25, 1993.

_____

Ernest Thomas Rossiello and Margaret Ann Zuleger, Rossiello & Associates, Chicago, IL, for plaintiff.

Barry A. Hartstein and Kathleen Ann McCabe, Jenner & Block, Chicago, IL, for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiff Edwin J. Krystof, Sr. ("Krystof") has filed a one count age discrimination claim against Defendant Hyatt Corporation ("Hyatt"). Krystof argues that Hyatt discharged him in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA"). Hyatt filed a motion for summary judgment, asserting that Krystof has not put forth a scintilla of evidence to support his claim. Krystof, in turn, asserts that he can show age discrimination through statistical evidence and a demonstration that Hyatt's proffered reason for his discharge is a pretext. For the reasons discussed below, Hyatt's motion for summary judgment is granted.

## BACKGROUND

Hyatt is a hotel-management company that manages various hotels bearing the "Hyatt" name, including the Hyatt Regency Chicago, and previously including the Hyatt Lincolnwood.

In February 1969, Hyatt hired Krystof, then age 42, to be a Night Auditor and Night Manager at the Hyatt Lincolnwood. Around September 1976, at age 50, Krystof became a Night Manager at the Hyatt Regency Chicago, and in this position he handled various accounting procedures. In 1983, at age 57, Krystof assumed the position of General Cashier at Hyatt Regency Chicago and held that position from 1983 until his termination on October 16, 1991.

As General Cashier, Krystof operated as the "bank" or "currency exchange" at the Hotel, handling two vaults (a large vault containing $185,000 and a small vault containing $30,000). Among his responsibilities were issuing and auditing "house banks," receiving deposits of funds from cashiers, assembling daily deposits for pick-up by security guards, verifying the amount of funds in the vault, issuing funds back to certain cashiers, handling petty cash, and updating the exchange rate for foreign currency.

When Krystof assumed the General Cashier position, his supervisors were Controller Bob McCall and Assistant Controllers Pam Seiter and Bikas Pandy. During the time he worked under McCall's supervision, Krystof received satisfactory evaluations for "production," but also received a number of criticisms concerning his accuracy and management skills. Specifically, in his November 1984 "Managerial Performance Evaluation," Krystof received an "unsatisfactory" rating for his "monitor[ing]" certain work, and was cautioned that "duebacks and vault must be consistently counted." He was also reminded that "bank counts have to be 100% every month—including night cashiers." In his July 1985 evaluation, Krystof was again reminded that "he must maintain 100% audits each month," and that he needed to "follow established procedures to maintain control of the funds. This includes bank audits, proper approvals, and accuracy, all of which must be done independently." In June 1986, Seiter sent Krystof a memorandum detailing procedures for conducting a house bank audit, but nine months later, in March, 1987, Krystof received a written warning for "failure to comply with house bank audit guidelines as set upon June 6, 1986." Krystof was warned that "failure to comply again will result in suspension."

In the fall of 1989, James Barnish replaced McCall as Controller. The Assistant Controllers at that time were Mike Marsch and Ashok Karra. Additional performance issues arose while Krystof was working under Barnish. For example, in May 1990, Krystof was cited for failure to count the vault for three days. In September 1990, he was cited for failure to follow appropriate procedures for issuing a $200 loan to an unidentified cashier. He was also notified that "should a shortage of this nature occur in the future employee suspension might occur." On or about May 16, 1991, Krystof was relieved of the responsibility of auditing house banks, and on July 3, 1991, Krystof was placed on 60 days probation after he failed to complete all deposits by month-end. The probation period was described as a means "to evaluate [his] performance and improve [his] management skills."

After completing his probation period, Krystof continued working until he was dis-

charged in October, 1991 pursuant to Hyatt's implementation of a reduction-in-force ("RIF"). Immediately prior to the RIF, Krystof was still General Cashier and Faneeza Shaw was Food and Beverage Cashier Supervisor. Pursuant to the RIF, 28 management personnel, including Krystof, were terminated from the Hyatt Regency Chicago, 3 of whom were managerial employees in the accounting division over age 40. Also as part of the RIF, Krystof's position was consolidated with that of Shaw and she was chosen to assume the consolidated position (General Cashier/Food and Beverage Cashier Supervisor). At the time of Krystof's termination, Shaw was 47 years old and Krystof was 65 years old.

On April 16, 1992, Krystof filed a charge of age discrimination against Hyatt with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"). On June 30, 1992, more than 60 days having elapsed since the filing of his charge, Krystof filed a complaint under the ADEA, claiming that Hyatt discharged him because of his age. On March 31, 1993, Hyatt filed its motion for summary judgment.

## DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure requires this court to enter summary judgment on Hyatt's motion "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Accordingly, the court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). The court must view the record and draw all inferences from it in the light most favorable to the non-moving party. *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir.1990). "[T]his general standard is applied with added rigor in employment discrimination cases, where intent is inevitably the central issue." *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 370–371 (7th Cir.1992).

The ADEA prohibits employers from refusing to hire, discharge, or otherwise discriminate against any individual 40 years of age or older with respect to his or her compensation, terms, conditions, or privileges of employment, because of that individual's age. 29 U.S.C. §§ 623(a), 631(a). The Seventh Circuit has clearly articulated the standard governing the determination of age discrimination claims as follows:

> [A] terminated plaintiff's ultimate burden in an age discrimination case is to prove that he was discharged because of his age. The plaintiff need not prove that age was the sole factor motivating the employer's decision, only that age was a determining factor in the sense that he would not have been fired *but for* the employer's motive to discriminate on the basis of age.

*McCoy*, 957 F.2d at 371 (emphasis added); *see also, Hazen Paper Co. v. Biggins*, —— U.S. ——, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993).

A plaintiff may use two possible methods to show age discrimination. First, "[he] may try to meet [his] burden head on by presenting direct or circumstantial evidence that age was the determining factor in [his] discharge." *Oxman v. WLS–TV*, 846 F.2d 448, 452 (7th Cir.1988). Second, because finding evidence of discriminatory intent may be extremely difficult, a plaintiff may also take an "indirect" route to proving such a claim. *Perfetti v. First National Bank of Chicago*, 950 F.2d 449, 451 (7th Cir.1991). The indirect method is the "indirect, burden-shifting method of proof for Title VII cases originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later adapted to age discrimination claims under the ADEA." *Oxman*, 846 F.2d at 452. In the case at bar, Krystof asserts that he can raise a material issue of fact through each method. Considering the evidence, however, in the light most favorable to Krystof, neither method of proof

would allow a reasonable jury to find in his favor.

## I. Direct Method.

■ Krystof states that he can show discrimination through the "direct" method using statistical circumstantial evidence of age discrimination. Specifically, Krystof asserts that 5 managerial accounting employees were terminated during the RIF and that 3 of these 5 were age 40 years or older. In addition, of these 3 employees, 2 were the oldest accounting managers in the division.[1] According to Krystof's statistics, the average age of the terminated employees was 47.8.

Krystof's statistical argument has no discernable relevance to the question of discriminatory intent on the part of any of Hyatt's decisionmakers for three reasons. First, the statistical sample that he puts forth is simply too small to support any inference of age discrimination. In disparate impact cases involving similar facts and statistical data, the Seventh Circuit "[has] almost uniformly rejected statistical conclusions based upon such small samples, especially in discharge cases."[2] *Soria v. Ozinga Bros., Inc.,* 704 F.2d 990, 995 (7th Cir.1983) (court disregarded sample size of less than 15 employees); *see also, Sengupta v. Morrison–Knudsen*

*Co., Inc.,* 804 F.2d 1072, 1076 (9th Cir.1986) (sample of only 28 employees disregarded in discharge case); *Williams v. Tallahassee Motors, Inc.,* 607 F.2d 689, 693 (5th Cir. 1979), ("the smaller the sample size, the greater the likelihood that the underrepresentation reflects chance rather than discriminatory practices").[3]

Second, Krystof's statistics do not show discriminatory motive. Essentially, Krystof's statistical data indicates that pursuant to the RIF, 3 out of 5 accounting managerial employees, rather than 3 out of 8 such employees (as Hyatt alleges) were discharged.[4] As stated in *Gustovich v. AT & T Communications, Inc.,* 972 F.2d 845, 851 (7th Cir. 1992), however: "[Plaintiff has] pointed to [a fact that is] *consistent* with age discrimination but [has] presented no evidence that age *actually motivated* [the Defendant's] decision to terminate [him]." Whether the relevant pool is 3 out of 5 or 3 out of 8, these figures provide absolutely no evidence of discriminatory motive.

Third, Krystof's assertion that Hyatt made "telling errors" in its roster of accounting employees remaining employed after the RIF fails to show motive because these er-

1. Krystof asserts that he, age 65 and Edna Hamilton, age 60, were the oldest employees in the accounting department.

2. The 7th Circuit has recently indicated that a disparate impact theory of liability is available under the ADEA. *See, Fisher v. Transco Services–Milwaukee, Inc.,* 979 F.2d 1239, 1244 (7th Cir.1992); *but see, Hazen Paper Co.,* — U.S. at ——-——, 113 S.Ct. at 1705–06 (Supreme Court is undecided whether disparate impact may be applied under the ADEA). In a disparate impact claim, "an employee must first show that an employer utilizes a particular employment practice that results in a disparate impact upon a protected class of workers." *Id.* at 1245. Accordingly, in *Fisher,* the employee argued that the employer's program, "while having facially neutral criteria, fell more harshly upon [the employer's] older employees." *Id.* Krystof, in contrast, does not argue that Hyatt had a "facially neutral" policy that affected older workers disproportionately. Instead, Krystof only raises a disparate treatment claim—that "he was targeted for discharge by [Hyatt] because of his age, as part of an otherwise legitimate reduction in force." Krystof, Answer Brief, p. 1.

3. Although the Seventh Circuit is reluctant to render conclusions in a disparate impact claim

based upon small statistical samples, the Seventh Circuit has also stated that this is not a "hard and fast rule and generally some substantial evidence of the unreliability of the statistics is asserted before it is applied." *Fisher,* 979 F.2d at 1245. The reliability of Krystof's statistics does not even come close to that of the statistics in *Fisher.* In that case, "[o]f the 11 [employees] terminated, 10 were of a protected age ... [and] 10 of 27 older employees were terminated, as against 1 of 25 younger ones." *Id.* In contrast, Krystof's statistics illustrate that 3 out of 28 terminated employees were over 40, and 3 out of the 5 terminated employees in the Accounting Division were in the protected age group. Krystof concedes that the RIF affected only 3 out of 16 management personnel in the Accounting Division over 40 years of age, and he provides no evidence that the RIF had a disproportionate impact on older managers in the Accounting Division.

4. Krystof argues that Hyatt mischaracterizes the "accounting department" to include 3 extra employees in their 20's, camouflaging that a disproportionate number of managerial accounting employees were terminated.

rors are minute and do not reflect bad faith on Hyatt's part. Specifically, Hyatt had added one year to the true age of 2 of the 5 oldest employees listed, and added 1 year to the age of Shaw (Krystof's successor). Although these errors are in Hyatt's favor, they do not alter the numbers of employees within the protected class, and Krystof fails to show how they materially change the relevant data. Krystof blithely implies, but fails to show, that Hyatt made these errors in bad faith in order to hide intentional discrimination.

In sum, absent other evidence of discrimination, Krystof's figures fall far short of showing any discriminatory motive on Hyatt's part.

II. *Indirect Method.*

■ When using the indirect method in a RIF case, the plaintiff must first set forth a "prima facie" case by establishing that (1) he was within the protected age group; (2) he was performing according to his employer's legitimate expectations; (3) that he was terminated; and (4) that others not in the protected class were treated more favorably. *Oxman*, 846 F.2d at 455. Showing a prima facie case establishes a rebuttable presumption of discrimination. *McCoy*, 957 F.2d at 371. The employer then bears the burden of articulating a "legitimate, nondiscriminatory reason for the employee's discharge." *Id.*

If the employer provides such a reason or reasons, the burden shifts back to the employee to show that the employer's proffered reasons are a pretext. *Id.; See also, Gustovich v. AT & T Communications, Inc.,* No 90–C–2808, 1991 WL 1716 (N.D.Ill. Jan 7, 1991) (Duff, J.), *aff'd,* 972 F.2d 845 (7th Cir.

1992). In order to accomplish this, the plaintiff must establish "(1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate his discharge; or (3) they were insufficient to motivate discharge." See *Kier v. Commercial Union Insurance Companies,* 808 F.2d 1254, 1259 (7th Cir.1987). "[I]f the plaintiff proves that the employer's proffered explanation is pretextual, the jury may infer discrimination from that proof alone." *Perfetti,* 950 F.2d at 451.

■ Krystof asserts that he can show age discrimination through the indirect, burden-shifting method. He fails, however, to succeed in this endeavor, because he does not show that Hyatt's proffered legitimate business reason for his discharge is pretextual.

For the purposes of this opinion, this court will assume that Krystof puts forth a prima facie case.[5] The burden then shifts back to Hyatt to articulate a legitimate business reason for his termination. Hyatt meets its burden by explaining that Krystof was discharged as the result of an economically-motivated RIF. Pursuant to this RIF, Hyatt selected Shaw, instead of Krystof, to fill the consolidated position of General Cashier/Food & Beverage Cashier Supervisor because Hyatt felt she was the better qualified employee.

The burden then shifts back to Krystof who must show that this reason is a pretext. Krystof incorrectly argues that he demonstrates pretext by making the requisite showing that he was performing according to Hyatt's "legitimate business expectations." This argument stems from Krystof's misun-

---

5. The parties do not dispute that Krystof can establish the first and third items of the prima facie case because he is in the protected class and he was discharged. They do dispute whether Krystof can establish the remaining necessary elements—that Krystof was performing up to Hyatt's legitimate expectations, and that others not in the protected class were treated more favorably. Krystof may conceivably establish that he was performing according to Hyatt's legitimate expectations because he produces some evidence indicating that his performance "deficiencies" were the result of a fluke, understaffing, and that some were irrelevant because they occurred too long before his dismissal. Krystof also asserts that his statistical data shows that

others in the protected class were treated more favorably. The requirement that Krystof show that other employees not in the protected class were treated more favorably "merely requires an employer that releases a protected employee while simultaneously hiring (or not "bumping") younger employees to fill positions for which the older employee was qualified to explain its actions without forcing the protected employee [to uncover evidence of the employer's discriminatory intent.]" *Oxman*, 846 F.2d at 455. Krystof's statistics may help to show that younger employees were treated more favorably than him—especially in light of Krystof's complaint that he was not considered for a position, such as night auditor, for which he was qualified.

derstanding of Hyatt's proffered reason for his discharge and his misapplication of the holding in *Fisher v. Transco Services–Milwaukee, Inc.,* 979 F.2d 1239 (7th Cir.1992). In that case, the plaintiffs argued that their employer's employee evaluation program had unreasonable requirements and errors in its implementation which were evidence that this program was merely a means to fire older employees. Accordingly, the court found that "the issue of legitimate performance is best merged with the issue of pretext." *Fisher,* 979 F.2d at 1243. *See also, Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1571 (7th Cir.1989). The court explained that the employer's legitimate expectations of employee performance were wholly dependent upon an evaluative performance program alleged to be a pretext for age discrimination. *Id.* at 1243. Merging performance issues with pretext issues made sense to the *Fisher* court since, if the employer's job requirements were "found to be illegitimate, it follow[ed] that [the employer's] expectations were likely pretextual, and vice versa ... [T]o hold otherwise would unnecessarily insulate [the employer] from the burden of articulating a nondiscriminatory reason for the discharge of [the employees]." *Id.*

Krystof likens his case to *Fisher* because he asserts that "deficiencies in his performance" were the proffered reason for his termination.[6] In fact, Krystof's case is distinguishable from that case because Hyatt mentioned Krystof's performance only as it related to whether he could show a prima facie case and as one element of the relative performance evaluation between Shaw and Krystof. Unlike in *Fisher,* demonstrating that Hyatt did not have legitimate expectations of Krystof fails to show that Hyatt's reasons for terminating him (i.e.: the economically-driven RIF and its preference for Shaw's performance) are dishonest.

In fact, Krystof presents absolutely no evidence that Hyatt's proffered reasons for his discharge are a pretext. Hyatt provides many reasons besides Krystof's "deficien-

cies" for the decision that Shaw was the more appropriate person for the consolidated position. In selecting between Shaw and Krystof for the consolidated job of General Cashier/Food & Beverage Cashier Supervisor, Barnish recommended retention of Shaw based on various factors including:

(1) Shaw had performed both jobs in the past, which included working as General Cashier when Krystof was on vacation but Krystof had never performed the job of Food & Beverage Cashier Supervisor; (2) the Food & Beverage Cashier Supervisor job involved supervising 30–40 cashier, as well as scheduling and evaluating employees, and implementing the responsibilities as General Cashier; (3) Shaw's recent job performance was better than Krystof's, and Krystof had been experiencing performance problems in the job of General cashier, which [fact] led Barnish to conclude that Krystof could not handle the increased workload of the combined jobs.

Hyatt, 12(m) Statement, p. 8.

"An employee's self-serving statements about his ability, ... are insufficient to contradict an employer's negative assessment of that ability ... Such statements may create a material dispute about the employee's ability but do nothing to create a dispute about the employer's honesty—do nothing, in other words, to establish that the proffered reason is a pretext for discrimination." *Gustovich,* 972 F.2d at 848. Accordingly, Krystof's argument that he was meeting Hyatt's legitimate expectations may indicate that Hyatt incorrectly assessed his abilities, but do not show that Hyatt's proffered reasons for his discharge are dishonest.

Krystof provides insufficient evidence that Hyatt's decision to terminate him was anything but a good-faith business decision. The Seventh Circuit repeatedly has held that the court " '[does] not sit as a super-personnel department that reexamines an entity's business decisions,' " and its purpose is not to "second-guess an employer's good faith business decision." *Smith v. General Scanning,*

---

**6.** Krystof complains that Hyatt failed to interview him and Shaw to determine who was the most qualified employee for the consolidated position. The fact that there is no interview is not evidence that Hyatt's proffered business reason is pretext. There is no evidence that Hyatt was not making an honest business decision in deciding not to interview the two candidates.

*Inc.*, 876 F.2d 1315, 1321 (7th Cir.1989).[7] In Krystof's 12(n) statement, he fails to show that Hyatt did not make a good-faith comparison of his performance with that of Shaw.[8] According to Hyatt's 12(m) statement, the termination process worked as follows:

> "In making the termination decisions, the general rule was that employees whose positions were eliminated were terminated; where two jobs were consolidated, one of the employees was selected for termination based on his or her respective performance and skill level. Seniority was not a consideration in making termination decisions, and more senior management personnel were not permitted to "bump" less senior personnel. With respect to the Accounting Division, in which Krystof worked, James Barnish, Controller, was responsible for making the preliminary recommendation of which management positions were to be eliminated or consolidated, and the final decision was made by Adie [i.e.: Rick Adie, General Manager of the Hyatt Regency Chicago] and Thomas [i.e.: Carla Thomas, Regional Director of Human Resources at the Hyatt Regency Chicago]. Two positions recommended for consolidation by Controller Barnish were the positions of General Cashier and Food & Beverage Cashier Supervisor ... Controller Barnish was familiar with the job performance and job responsibilities of both individuals because they had worked under his supervision since September, 1989 [and he recommended that Shaw be selected to fill the new position]."

Hyatt, 12(m) Statement, pp. 7–8.

Krystof also alleges that defendant was attempting to "frustrate and provoke him into quitting or retiring" because in late 1990, Barnish asked him if he would like to transfer to the security department. Krystof says that when he declined this offer asking Barnish, "what would I be doing in security with an accounting background?" Barnish "did not say too much of anything in response." Krystof said that he was again approached by Kathy Rossi, Hyatt's human resources manager, about a position in the mailroom. Rossi advised Krystof that if he did not accept this position in the mailroom, he "may not have a job." Krystof declined this offer as well. Krystof, Answer Brief, pp. 15–16. Uncontroverted testimony of Thomas, however, demonstrates that Hyatt did not even consider a RIF until late September, 1991. Even if Hyatt did consider transferring Krystof to a new department if Hyatt did consider transferring Krystof to a new department earlier in his career, there is no evidence that the purpose of discharging him pursuant to the RIF was to mask such intentions.

Krystof's remaining pretext arguments also lack merit. Krystof contends that Hyatt's failure to inform him that there were reasons other than the RIF for his termination (i.e., that Shaw was more qualified and that Krystof was not meeting Hyatt's legitimate expectations) is evidence of pretext. In support, Krystof cites a Seventh Circuit reduction-in-force case in which the court indicated that an employer's failure to disclose the proffered reasons for discharging two employees at the time of their terminations showed pretext. *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 23 (7th Cir.1987), *overruled on other grounds by, Coston v. Plitt Theatres, Inc.*, 860 F.2d 834 (7th Cir. 1988), *and aff'd in part and vacated in part,*

---

**7.** It is true that employers may often use subjective factors to "camouflage discrimination." See *Perfetti*, 950 F.2d at 457; *Giacoletto v. Amax Zinc Co., Inc.*, 954 F.2d 424, 426–427 (7th Cir.1992). Krystof cannot, however, legitimize his age discrimination claim simply by alleging that Hyatt considered "subjective" factors in selecting Shaw over himself. In fact, he fails to effectively challenge Hyatt's subjective reasons for his discharge, because he does not present evidence that they were "disingenuous or inconsistently applied." *Perfetti*, 950 F.2d at 457.

**8.** In his 12(n) statement, Krystof asserts that he has "insufficient knowledge and information to either admit or deny" items 26–33, 35, and 36, wherein Hyatt explains the procedure and reasons behind its decision to terminate him. This court has discretion to interpret its responses to these items as admissions of fact because Krystof fails to "controvert" them in Hyatt's 12(m) statement pursuant to Local Rule 12(n). See *Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir.1990). This court does not reach the issue of whether these uncontroverted facts shall be considered undisputed material issues of fact. Through his failure to refute Hyatt's proffered reasons for his termination, however, Krystof fails to meet his burden of proof to show pretext.

*Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198 (7th Cir.1989). In that case, the employer's proffered reasons for discharging these employees were a reduction in force and the employees' poor performances. At the time of their terminations, however, the employees were informed only that they were being discharged as the result of economic cutbacks. *Id.* at 21–22.[9]

Krystof's case is distinguishable from *Graefenhain* for several reasons. First, unlike the employees in that case, who had been recognized for outstanding performance prior to their terminations, Krystof was criticized for his performance before his discharge. *Id.* at 15. Second, as explained above, Krystof's poor performance was not the proffered reason for his termination. Rather, it was only one factor in Hyatt's decision to select Shaw for the consolidated position. Lastly, in *Graefenhain*, there was sufficient evidence to show that the employer did not comply with its own purported reduction-in-force policy and that the employees' superiors did not agree that the employees' performances were unsatisfactory.

In sum, Krystof puts forth no evidence to show that Hyatt's legitimate business reasons had no basis in fact, or that they were insufficient or did not actually motivate his discharge. Considered in its entirety, the evidence that Krystof presents is insufficient to raise a material issue of fact as to pretext.

### CONCLUSION

For the reasons discussed above, Hyatt's motion for summary judgment on Krystof's age discrimination claim is granted.

---

9. Krystof also states that he can show pretext because Hyatt's reasons for his discharge are contradicted by the letter of recommendation given to him upon his termination, and because Barnish told Krystof at the time of his discharge that he would do what he could to obtain for Krystof another position at another Hyatt. This evidence does not support Krystof's position because (1) Krystof's recommendation did not directly contradict Hyatt's business reasons for his termination because poor performance was not the proffered reason for his discharge; and (2) the letter of recommendation and Barnish's offer may be viewed as after-the-fact efforts to help Krystof during a transitional time.

Krystof also alleges that he was never interviewed for an assistant controller position in 1988, despite his written request and experience, and that Barnish failed to consider him for an alternate position within the accounting division, such as one of the night auditors, despite that he had served in that capacity. This court feels that these allegations, even in conjunction with Krystof's other evidence, do not support his age discrimination claim and are outside the scope of this decision.