# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-3484

JOHN ZACCAGNINI,

*Plaintiff-Appellant,*

v.

CHAS. LEVY CIRCULATING CO.,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01-C-4304—**Matthew F. Kennelly**, *Judge.*

———————

ARGUED FEBRUARY 11, 2003—DECIDED JULY 29, 2003

———————

Before EASTERBROOK, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* John Zaccagnini, who was discharged due to a reduction-in-force, claims that his former employer, Chas. Levy Circulating Company (CLCC), failed to rehire him in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* The district court granted CLCC's motion for summary judgment, finding that Zaccagnini could not show that CLCC's proffered legitimate, nondiscriminatory reason for not rehiring him was a pretext for age discrimination. We find that Zaccagnini has established a prima facie case of discrimination and that CLCC's inconsistent explanations for its decision not

to rehire Zaccagnini call the credibility of its proffered non-discriminatory reason into question. Because we cannot say that no reasonable jury could conclude that CLCC's explanations are a pretext for age discrimination, we reverse the judgment of the district court.

## I. BACKGROUND

CLCC is a wholesaler of printed media that employs truck drivers to distribute newspapers, magazines, and paperback books to retail stores throughout the Chicago area. Zaccagnini began working for CLCC in October 1994, and it is undisputed that he satisfactorily performed his duties as a driver for the company. On March 19, 1997, CLCC discharged Zaccagnini pursuant to a reduction-in-force (RIF).[1] At that time, Zaccagnini was 51 years old, and the ten other drivers subject to the RIF ranged in age from 23 to 45. When Chuck Lynch, the vice president of operations at the time of Zaccagnini's discharge, informed Zaccagnini that he was being laid off, Zaccagnini said that he would like to be rehired should the company's need for drivers change. According to Zaccagnini, Lynch responded that if CLCC were in the position to hire drivers in the future, he would rehire Zaccagnini. A few months later, CLCC's business improved and the company hired four new drivers: Angel Rodriguez (age 30), Andrea Staten (age 35), Orion Hecker (age 31), and Jimmy Santiago (age 32).

Zaccagnini filed a grievance with his union, Local 706, claiming that he should have been rehired when CLCC hired Rodriguez, Staten, and Hecker.[2] (As of the date of Zaccagnini's grievance, CLCC had not hired for its fourth

---

[1] This was apparently the first RIF in the history of CLCC. Zaccagnini does not challenge here his discharge in the RIF.

[2] Zaccagnini was the only employee laid off in the March 1997 RIF who sought to be rehired by CLCC.

driver position.) In response, Kevin King, CLCC's delivery manager, scheduled a meeting with Zaccagnini, Lynch, and Tony Judge, Sr., the union's secretary treasurer. King later summarized this meeting in a letter to Judge, stating that (1) the group had reviewed Zaccagnini's layoff; (2) "[t]he company has the right to re-call or not re-call drivers"; and (3) "[n]o laid off driver has been recalled [n]or are their [sic] plans to recall any of them." The union subsequently denied Zaccagnini's grievance. CLCC's fourth new driver, Jimmy Santiago, was hired on October 6, 1997.

Zaccagnini filed a claim with the Illinois Department of Human Rights (IDHR) and then filed suit in federal court, alleging that CLCC's decision not to rehire him constituted age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* CLCC moved for summary judgment, claiming that Zaccagnini had not established a prima facie case under the ADEA because he failed to show that he applied for an available driver position and because he was not similarly situated to Rodriguez, Staten, Hecker, and Santiago. The district court concluded that Zaccagnini established a prima facie case of age discrimination, but it granted summary judgment in favor of CLCC after finding that Zaccagnini could not show that the company's legitimate, nondiscriminatory reason for its decision not to rehire Zaccagnini was pretextual. Zaccagnini appeals.

## II.  ANALYSIS

We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to Zaccagnini, as the nonmoving party, and drawing all reasonable inferences in his favor. *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002). Because Zaccagnini does not have direct evidence of age discrimination, he must proceed under the familiar burden-shifting

framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996) (assuming that the *McDonnell Douglas* framework applies in the ADEA context).

To establish a prima facie case under the ADEA, Zaccagnini must show that (1) he is a member of the protected class (age forty or older); (2) he applied for and was qualified for the position he sought; (3) CLCC rejected him; and (4) CLCC hired another similarly situated individual for the position who was substantially younger than Zaccagnini. *See Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1045 (7th Cir. 2000). If Zaccagnini establishes a prima facie case, then the burden shifts to CLCC to articulate a legitimate, nondiscriminatory reason for its decision not to rehire him. *See Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003). If CLCC asserts a legitimate, nondiscriminatory explanation, the burden returns to Zaccagnini to show that the company's proffered reason is merely a pretext for age discrimination. *Id.*

### A.  Prima facie case

On appeal, CLCC renews its argument that Zaccagnini has not met his burden of establishing a prima facie case, asserting that he has not shown he applied for the position under the second prong, nor that he was similarly situated to the other new hires, as is required under the fourth prong.[3] The gravamen of CLCC's challenges to Zaccagnini's prima facie case is that Zaccagnini was not referred by the union, so he could not have been an applicant or similarly situated to other union-recommended candidates for the

---

[3] The first and third prongs—that Zaccagnini is over forty and that CLCC failed to rehire him—are not in dispute.

position. Analysis of CLCC's union-hiring rationale more properly belongs in our analysis of this proffered explanation for its hiring decision, *see E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1194-95 n.7 (10th Cir. 2000), so we will put this question aside for the moment and first consider CLCC's arguments that bear more directly on the prima facie case.

Zaccagnini's grievance with the union satisfies the requirement that he show he applied to be a driver. Zaccagnini filed the grievance on August 31, 1997, more than a month before CLCC filled its last driver position. CLCC admits that Zaccagnini's "grievance asserted that . . . he felt he should be next to be rehired." Def. Br. at 19 n.4. What is more, Zaccagnini discussed his grievance with CLCC management and union officials on September 30th, more than a week before Santiago was hired, and King's letter summarizing the meeting indicates that the group discussed Zaccagnini's desire to be rehired.[4] Under the circumstances, we believe that Zaccagnini's grievance satisfies his burden to show he applied for the driver position.

With respect to the fourth prima facie element, CLCC contends that Zaccagnini was not similarly situated to the four men hired for the driver positions because those new hires, unlike Zaccagnini, were not involved in the RIF. In determining whether two or more individuals are similarly situated, we have centered our analysis on characteristics such as education, experience, performance, qualifications,

---

[4] We also note that it is unclear exactly what else Zaccagnini should have done to "apply" for a position with CLCC. Angela McLeod, a member of CLCC's human resources department at the time, testified that "when [candidates] came in for interviews, they filled out applications," R.13, Ex. J at 8, but Zaccagnini was never called for an interview, so we are unsure whether he ever had the opportunity to complete a formal application.

and conduct. *See Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 322 (7th Cir. 2003). CLCC's citation to *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000), is not to the contrary. In *Radue*, we found that involvement in the RIF was relevant when the plaintiff claimed that younger employees who were subject to an RIF were being transferred to available positions, while older employees, subject to the same RIF, were not. *Id.* at 615. Here, unlike *Radue*, the pool of applicants for the new driver positions was not limited to CLCC employees subject to the RIF, so Zaccagnini's membership in the RIF is not a relevant factor in considering whether he is similarly situated to the four new hires. *See Balderston*, 328 F.3d at 321 (explaining that the similarly situated prong is modified in RIF cases when the employer decides who will be rehired from a defined group); *see also Taylor v. Canteen*, 69 F.3d 773, 779 (7th Cir. 1995) (Plaintiffs in RIF cases "bear no heavier a burden of proof than other ADEA plaintiffs."). That Zaccagnini was similarly situated to the new hires with respect to relevant qualities such as experience, performance, and qualifications, is undisputed and is factually supported by his three years of satisfactory work performance as a driver for CLCC. *See Ghosh v. Ind. Dep't of Envt'l Mgmt.*, 192 F.3d 1087, 1091 (7th Cir. 1999) (holding that the similarly situated prong is satisfied where the hired employees "had similar or lesser qualifications for the job" than the plaintiff).

### B. Legitimate, nondiscriminatory reason

Because Zaccagnini has established a prima facie case of age discrimination, CLCC next carries the burden of articulating a legitimate, nondiscriminatory reason for not hiring Zaccagnini. *See McDonnell Douglas*, 441 U.S. at 802. On appeal, CLCC defends its decision not to rehire Zaccagnini with the explanation that "he was not rehired because the Company had a practice of hiring only those individuals

who were referred by the Union," Def. Br. at 21, and Zaccagnini was not so recommended. Because this reason is at least "facially legitimate," the burden now reverts to Zaccagnini to demonstrate that it is a pretext for discrimination. *See id.* at 804.

### C. Pretext

To establish pretext, Zaccagnini must show either that CLCC was motivated by a discriminatory reason or that CLCC's proffered reason is unworthy of credence. *See, e.g.*, *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 372 (7th Cir. 1992). "Because a fact-finder may infer intentional discrimination from an employer's untruthfulness, evidence that calls truthfulness into question precludes a summary judgment." *Perdomo v. Browner*, 67 F.3d 140, 145 (7th Cir. 1995). So Zaccagnini may avoid summary judgment by pointing to specific facts that place CLCC's explanation in doubt. *See, e.g.*, *Schuster v. Lucent Techs.*, 327 F.3d 569, 578 (7th Cir. 2003).

In its initial briefing before the district court and during discovery, CLCC maintained that Zaccagnini was not rehired because the company had a policy not to rehire workers who had been laid off. Zaccagnini argues that CLCC's current argument—that Zaccagnini was not rehired because he was not referred by the union—is unworthy of credence because CLCC did not rely on this second explanation until its reply brief at summary judgment. We agree. From the beginning, CLCC appeared to explain its decision not to rehire Zaccagnini by the existence of a policy not to rehire drivers who were laid off. In his deposition, Zaccagnini testified that this was the reason provided to him during the grievance hearing: "It was a meeting in the office saying that they were not going to rehire me. It was their policy not to rehire. That's what I remember." R.13, Ex. B at 68. Similarly, Chris Eckert, CLCC's then-human

resources coordinator, stated to the Illinois Department of Human Rights that "its [sic] been [CLCC's] practice not to rehire permanently laid off drivers." That this reason was provided at these early stages is relevant to our inquiry: the consistency of the explanation provided by an employer at the time of an employment decision and in an administrative proceeding is evidence of the veracity of the employer's explanation at summary judgment. *See Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285, 291 (7th Cir. 1999); *Perfetti v. First Nat'l Bank of Chicago*, 950 F.2d 449, 456 (7th Cir. 1991).

CLCC's reliance on its no-rehire policy explanation was made even more explicit in its written discovery responses. CLCC responded as follows to Zaccagnini's interrogatory requesting the reasons for its decision not to rehire him:

> Interrogatory No. 3: Please state whether or not John Zaccagnini was considered for rehiring by CLCC at or around the time that CLCC made the [new] hires . . ., and if so, please state all the reasons why Zaccagnini was not rehired; if not, please state all the reasons why Zaccagnini was not considered.

> Response: Zaccagnini was not considered for rehire by CLCC in or around the Fall of 1997 because there are no recall rights in the applicable collective bargaining agreement and, therefore, laid off employees were not considered by the company. In addition, there is no historical practice of recall of laid off drivers.

This answer did not mention limiting hiring to union candidates as a rationale for not rehiring Zaccagnini.

Furthermore, as the district court noted, CLCC's opening brief in support of its motion for summary judgment focused on its no-rehire explanation for its failure to rehire

Zaccagnini. *See Zaccagnini v. Chas. Levy Circulating Co.*, No. 01 C 4304, at *1-2 (N.D. Ill. Aug. 23, 2002) ("Defendant's opening brief mentioned the point in passing, and it was not until the reply that it was relied upon prominently. Plaintiff reasonably could have read defendant's opening brief as relying only on a single rationale—a purported 'no rehire' policy.").[5] Indeed, CLCC's brief made clear that it did not even rely on the union-hiring rationale as a secondary explanation, noting instead that "even if there had not been a no-rehire policy, King was not aware of Zaccagnini's interest in rehire. . . ."

For the first time in its reply brief at summary judgment, CLCC made clear that it was offering another explanation for its decision not to rehire Zaccagnini: the company has a practice of only hiring drivers through the union and Zaccagnini was not referred by the union. The fact that this explanation did not arise until CLCC's reply brief may be enough in and of itself to preclude summary judgment for CLCC on this issue, since a jury could reasonably find that its failure to come forward with this explanation earlier makes it not credible. *See O'Neal v. City of New Albany*, 293 F.3d 998, 1005-06 (7th Cir. 2002) (finding that the changed reasoning of the employer was sufficient to preclude

---

[5] CLCC argues that the union-hiring rationale was sufficiently disclosed in the deposition testimony of King and McLeod. Both mentioned that the drivers CLCC hires typically come from the union. While CLCC may rely on the union for most of its candidates, this may not have been the reason for not rehiring Zaccagnini. *See Emmel v. Coca-Cola Bottling Co.*, 95 F.3d 627, 634 (7th Cir. 1996). Therefore, there is no reason to believe that mere references to union involvement in hiring was sufficient notice that CLCC intended to rely on this fact as an explanation for its hiring. *See Ghosh*, 192 F.3d at 1094 ("[V]ague references to a claim contained in large amounts of discovery do not constitute sufficient notice.").

summary judgment because a trier of fact could reasonably infer from that evidence that the defendants' proffered reasons were pretextual); *Stalter*, 195 F.3d at 291 ("[Defendant] changed its story between the time of the state administrative proceeding and the federal action. . . . Under our case law, this changed story is evidence of pretext, and entitles [plaintiff] to a trial on the issue of the reason for his termination."); *Emmel v. Coca-Cola Bottling Co.*, 95 F.3d 627, 634 (7th Cir. 1996) (finding the fact that defendant did not express an explanation for failure to promote earlier despite several opportunities to do so compelling); *Perfetti*, 950 F.2d at 456 (holding that when an employer gives one reason at the time of the adverse employment decision and another at trial that is unsupported by the evidence, "the jury could reasonably conclude that the new reason was a pretextual after-the-fact justification"). We find CLCC's reliance on this explanation beginning at such a late date in the proceedings to be "fishy," *see Russell v. Acme-Evans Co.*, 51 F.3d 64, 70 (7th Cir. 1995), but here a jury could rely on additional evidence to find this explanation to be pretextual.

Along with the shifting nature of CLCC's justification, Zaccagnini has put forward evidence that calls both CLCC's no-rehire and union-hiring rationales into question. For example, with respect to its no-rehire explanation, Tony Judge, the officer for Local 706 who CLCC claims supplies all of its applicants, testified that he never told CLCC that the union objected to CLCC's hiring a previously laid-off employee ("Absolutely not."). When asked how CLCC could have concluded that rehiring a worker would be problematic, he testified: "I don't know where they could have ever gotten that at all. That was never discussed. It was never, ever, ever brought up. I have been—I have been an agent and a union officer for that union since 1957. That was never brought up with any of our employees." R.13, Ex. E at 10. Additionally, CLCC's human resources policy explic-

itly allows for the rehire of former employees: "It is the policy of the company to review former employees for rehire on a case by case basis. Under certain circumstances it is in the best interest of the company to rehire a former employee."[6] That a material fact may exist as to the policy of rehiring former drivers is further demonstrated by Lynch's offer to rehire Zaccagnini if another position became available. Although this assurance is not sufficiently concrete to constitute an offer, in combination with other evidence it may indicate some flexibility in the company's rehire policies.

Moreover, CLCC's response to written discovery conflicts with its explanation that all drivers are hired through the union. In addition to his interrogatory requesting the reasoning for CLCC's decision not to hire him, Zaccagnini also served CLCC with an interrogatory asking for all of the ways in which CLCC recruits drivers. CLCC's response does not limit its methods for obtaining candidates to referrals from the union:

> Interrogatory No. 6: Please state all methods used by CLCC to recruit applicants for drivers and/or auxiliary drivers in 1997 (including any means by which CLCC let it be known that it was considering hiring). . . .

> Response: Word of mouth, referrals from Teamsters Local #706 and walk-ins.

"Answers to interrogatories are evidence." *Emmel*, 95 F.3d at 635. We have repeatedly emphasized the importance of providing full and complete interrogatory answers. *See Fortino v. Quasar Co.*, 950 F.2d 389, 398 (7th Cir. 1991)

---

[6] CLCC argued that driver positions are not covered by this policy, but instead are subject to the terms of a contractual bargaining agreement with the union, but that agreement is silent as to the rehire of former drivers.

(noting that Fed. R. Civ. P. 26 requires a party to supple-ment an interrogatory answer when it is no longer true and failure to amend is in substance a knowing concealment). Here, CLCC's answer makes clear that, at the very least, not all driver candidates come from the union. The same point was also indicated in the IDHR's investigation, which reported that CLCC's "practice was to contact the Union hall and inform the Union of a vacancy. . . but, because of the volume of applicants produced from walk-ins and advertisement[s], contacting the Union for applicants was rare." Given the differences between CLCC's interrogatory answer, the IDHR report, and its argument that CLCC has a policy or practice of hiring drivers whose names are provided by the union, a jury could decide CLCC's explana-tion was pretextual. *Emmel*, 95 F.3d at 635 (finding that when company's plausible explanation differed from response to an interrogatory, the jury could conclude that the "justification had been concocted in preparation for trial to fit the available facts").

Faced with the weaknesses in its two explanations, CLCC now attempts to slice its justification even thinner by proposing that even if not all hires in 1997 came from the union, the four new hires brought on by King were all hired as a result of referrals from the union.[7] CLCC moves away from its argument that the company actually had a policy

---

[7]  CLCC also makes an effort to explain the discrepancy between the interrogatory answer, the IDHR report, and its practice of hiring from the union by stating that it uses advertisements and discusses job openings with walk-ins to recruit job applicants, but it only hires individuals who the union recommends. We do not find this explanation satisfactory. When asked at oral argument why CLCC would ever need to recruit if all of its candidates were supplied by the union, CLCC fell back on the above explana-tion—that regardless of how others were hired, King only looked to the union for candidates.

of hiring only from the union, and instead focuses only on the hiring for the new drivers. As an initial matter, this seems different enough from the reason put forward in its brief to the district court and to this court to constitute yet another change in explanation. CLCC has not denied that King was employed by CLCC at the time Interrogatory No. 6, the interrogatory explaining CLCC's recruitment policy, was answered. Any clarification about its hiring and recruitment policies could have been provided at the time CLCC's response was drafted. Additionally, it is too late in the day for CLCC to offer further modification of its reasoning and still prevent the case from going to the jury. We believe this case is one "in which the multiple grounds offered by the defendant for the adverse action . . . are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plaintiff [can] withstand summary judgment." *Russell*, 51 F.3d at 70; *see also O'Neal*, 293 F.3d at 1005-06 (summary judgment precluded when no contemporaneous documents discussed employer's second explanation and plaintiff was not informed of it at the time of the employment action).

Finally, CLCC suggests that we should discount Zaccagnini's evidence challenging CLCC's proffered explanation because he has not provided any evidence pointing to age as a factor in CLCC's decision. Zaccagnini's case has proceeded under the indirect method of proof, and under this analysis, a plaintiff need not produce evidence of discrimination.

> We emphasize that [plaintiff's] failure to bring any evidence regarding age does not defeat his claim *per se*, the special virtue of the indirect method of proof is that it allows victims of age discrimination to prevail without presenting *any* evidence that age was a determining factor in the employer's motivation. Holding to the contrary would violate one of the purposes of *McDonnell Douglas* and *Burdine*,

> which is to permit plaintiffs to recover, even if they are unable to discover evidence of discrimination, simply by proving that the employer's proffered justification is unworthy of credence.

*Perfetti*, 950 F.2d at 451-52 (citation omitted). When combined with CLCC's shift in explanations, Zaccagnini has produced enough evidence to call into question CLCC's profferred justification, and as a result we find that a jury could determine CLCC's reasoning to be pretextual.


## III.  CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND the case for proceedings consistent with this opinion.


A true Copy:

       Teste:


                        _____
                        *Clerk of the United States Court of*
                           *Appeals for the Seventh Circuit*