**Christopher WILSON, Plaintiff–Appellant,**

v.

**RUSSELL–STANLEY CORPORATION, Defendant–Appellee.**

No. 03–1081.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 2003.

Decided Feb. 5, 2004.

Denise M. Mercherson, Chicago, IL, for Plaintiff–Appellant.

Kathy Perkins, Kansas City, MO, for Defendant–Appellee.

Before RIPPLE, MANION, and WILLIAMS, Circuit Judges.

### ORDER

Christopher Wilson appeals the district court's grant of summary judgment to Russell–Stanley Corporation on his disparate punishment claim under Title VII and 42 U.S.C. § 1981. Because we agree with the district court's determination that Wilson failed to prove that Russell–Stanley's decision to demote him was a pretext for discrimination, we affirm.

#### I. Background[1]

1. As plaintiff failed to comply with Local Rule 56.1, which requires a plaintiff contesting

Christopher Wilson, an African American, is currently employed as a troubleshooter in Russell–Stanley Corporation's Addison, Illinois plant which manufactures plastic chemical containers. Russell–Stanley purchased the Addison plant from Wilson's prior employer, Smurfit Plastic, in 1997 when plaintiff was employed as a production mechanic.

In March 1998, Russell–Stanley promoted Wilson to team leader of the blow molding department for the night shift. A team leader serves in a supervisory role and is responsible for maintaining safety standards, completing necessary paperwork, and overseeing shift activities such as machine operation and productivity. Team leaders are assessed based on the following criteria: (1) quality of work; (2) safety compliance; (3) productivity; (4) job knowledge; (5) time management; (6) attendance; (7) responsiveness; (8) communication; (9) problem solving; and (10) leadership/independence. These factors are scored on an inverse scale. A score of one is considered "outstanding;" two is above average; three is average; four is below average; and five is unsatisfactory.

Wilson contends that Russell–Stanley's decision to demote him in November 2000 from team leader to troubleshooter was racially discriminatory. While Wilson admits that he falsified scrap reports[2] and failed to complete other necessary paperwork, he asserts that other "similarly situated" Caucasian team leaders who committed the same infractions were not as severely disciplined and in fact remained team leaders. Specifically, Wilson points to William Larson and Charles Brigham as examples of Caucasian team leaders who committed the same violations and were not demoted. He also asserts that his supervisor, Greg LeValle, unfairly papered his employment records with disciplinary citations.

According to the defendant, however, Wilson was demoted due to his continued failure to comply with company procedure and policy as well as the frequency of his violations.[3] LeValle testified that Wilson was responsible for approximately 100 falsified scrap reports, while Larson was responsible for two or three false reports.[4]

summary judgment to individually rebut each statement of fact proffered by a defendant and *state whether it is disputed or undisputed,* this court considers the following facts as undisputed or admitted. *Appley v. Stuart West,* 929 F.2d 1176, 1178–79 n. 6 (7th Cir. 1991). At oral argument, plaintiff argued that he complied with Local Rule 56.1 by presenting *his personnel file as well as the personnel* file of his comparitors. However, it is not the duty of the district court, nor this court, to sift through the record to determine which facts are controverted and which are admitted. *See Fed. Trade Comm'n v. Febre,* 128 F.3d 530, 536 (7th Cir.1997) (requiring strict compliance with Local Rule 56.1).

2. Scrap reports are produced daily and detail the number of usable plastic products created by a machine. These numbers are then used *to estimate the viable inventory for sale and transport.*

3. In 1998, around the time of Wilson's promotion, Russell–Stanley points out that it be-

gan implementing more stringent paperwork requirements, as well as increasing its safety and quality standards. Greg LeValle, who replaced the plaintiff's prior supervisor, spearheaded this effort by increasing the scrutiny with which he reviewed the documentation of his subordinates. This increased scrutiny resulted in an increased number of disciplinary memoranda issued to all his subordinates.

4. All three men, Larson, Brigham, and Wilson, reported directly to Greg LeValle, who also conducted their evaluations. Plaintiff asks this court to discount LeValle's testimony and attempts to insert a material dispute concerning the accuracy of LeValle's evaluation scores and his recollection of the number of false scrap reports. As previously stated, plaintiff's failure to comport with Local Rule 56.1 renders his argument unavailing, as we must accept LeValle's account of the events as uncontroverted.

960

Defendant also points out that Larson and Brigham received more favorable evaluation scores.[5] Finally, defendant cites plaintiff's failure to monitor the safety of the employees working during his shift as an additional reason for its decision to demote the plaintiff.

The district court found that the plaintiff failed to satisfy his prima facie case, as he was not similarly situated to Larson or Brigham based on the disparity in their evaluation scores and the frequency of their cited infractions. The district court also found, in the alternative, that plaintiff failed to make a showing of pretext sufficient to rebut defendant's proffered legitimate reason for his demotion.

## II. Analysis

We review a district court's decision to grant summary judgment de novo, viewing all facts in the light most favorable to the nonmoving party, and the question presented here is whether there is a genuine issue of material fact that would preclude affirmance of the district court's ruling. *Zaccagnini v. Chas. Levy Circulating Co.,* 338 F.3d 672, 674 (7th Cir.2003). As Wilson has failed to present direct evidence of discriminatory intent, we will analyze this case under the familiar burden shifting framework set forth in *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie case of disparate treatment a plaintiff must prove that he: (1) is a member of a protected class; (2) was meeting his employer's expectations; (3) suffered an adverse employment action; and (4) was treated more harshly than other "similarly situated" non-class members. *Curry v. Menard, Inc.,* 270 F.3d 473, 478 (7th Cir.2001). As the district court noted, there is no issue concerning the first or third prong of this standard.

Defendant argues that plaintiff has failed to satisfy the "similarly situated" prong of the disparate treatment standard and we must agree.[6] In disparate punishment cases, a plaintiff must demonstrate that his performance, qualifications, and conduct is substantially similar (rather than identical) to members of the non-protected class. *Radue v. Kimberly–Clark Corp.* 219 F.3d 612, 617–618 (7th Cir.2000). "This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards,

---

5. Plaintiff was evaluated three times. In April 1999, he received an overall score of average to above average. In April 2000 his performance was deemed below average in six out of the ten assessment categories: quality of work, safety, job knowledge, responsiveness, communication skills, and leadership/independence. Finally, in December 2000, he also received a below average rating in six out of the ten assessment categories: quality of work, productivity, job knowledge, communication skills, problem solving, and leadership/independence. In contrast, Larson was hired in October 2000 and evaluated in November 2001. He received a score of below average in only two out of the ten assessment categories. Brigham was evaluated at the same time and received a similar score.

6. The district court correctly noted that Wilson is not required to prove that he was "meet[ing his] employer's expectations," as he admitted that he committed several infractions but alleged harsher punishment for similar misconduct. *See Grayson v. O'Neill,* 308 F.3d 808, 817 (7th Cir.2002) ("When a plaintiff produces evidence sufficient to raise an inference that the employer applied its legitimate expectations in a disparate manner, the second and fourth prongs of *McDonnell–Douglas* merge, allowing the plaintiff to establish a prima facie case by establishing that similarly situated employees were treated more favorably."); *see also Curry,* 270 F.3d at 478 (reasoning that the court should focus on the issue of pretext when the underlying claim alleges disparate punishment); *and Flores v. Preferred Technical Group,* 182 F.3d 512, 515 (7th Cir.1999) (foregoing the "meets expectations" prong in cases alleging disparate punishment).

and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.*

The uncontroverted evidence presented by the defendant tends to show that the plaintiff is not "similarly situated" to other team leaders. Plaintiff was reprimanded far more frequently than his Caucasian counterparts, Larson and Brigham. The defendant was also able to show that the plaintiff received less favorable evaluation scores. However, the plaintiff has failed to present evidence that LeValle was mistaken in counting the number of false scrap reports submitted by the plaintiff as compared to those submitted by the other team leaders.[7] Therefore, plaintiff has failed to show that he was "similarly situated" to either Larson or Brigham. *See Grayson,* 308 F.3d at 819 (reasoning that a plaintiff was not "similarly situated" to coworkers when he was the only employee who was the "subject of more than 100 complaints").

Even if we were to find the appropriate level of similarity between Wilson, Larson and Brigham, plaintiff has still failed to rebut defendant's legitimate reason for his demotion. As evidence of pretext, plaintiff asserts the following: (1) he was given a large number of non-English speaking subordinates with whom he could not communicate; (2) defendant's evaluation system is inconsistent; and, (3) African–American team leaders were required to work on machines, while Caucasian team leaders only had to serve in a supervisory capacity.

Plaintiff, however, does not support his assertions with anything more than his own statements. To support a finding of pretext, this court must find that "a discriminatory reason more likely motivated the employer" or "the employer's proffered reason is unworthy of credence." *Billups v. Methodist Hosp. of Chicago,* 922 F.2d 1300, 1302–03 (7th Cir.1991)(quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

■ As to Wilson's evidence in support of pretext, Wilson has not presented any evidence that other team leaders were given only English speaking subordinates. Second, he has presented no evidence that defendant's inconsistent evaluation system is linked to race. Rather, the evidence shows that everyone was evaluated inconsistently. *See Jordan v. Summers,* 205 F.3d 337, 343 (7th Cir.2000) (noting that foolish business decisions are not a basis for finding pretext). Finally, plaintiff's last contention that he was being forced to do mechanic's work in addition to his supervisory duties, is unsubstantiated by the record. So, plaintiff has failed to show that his employer's stated reasoning, i.e., that Wilson failed to comply with procedures and policies with far greater frequency than other employees, was false or discriminatory. Accordingly, his circumstantial evidence fails to support a finding of pretext.

---

7. Plaintiff's failure to comply with Local Rule 56.1 had profound effects on the outcome of this case. This case presents the odd situation where the claimed discriminator is responsible for creating the "dissimilarity" between the plaintiff and the nonclass members. Had plaintiff presented a counter statement of facts, there could potentially be a material issue in dispute concerning whether plaintiff's performance merited a below average label or whether he had in fact falsified over 100 scrap reports. However, as previously stated, we must accept all of the defendant's proffered facts as undisputed and unrebutted.

III. Conclusion

For the foregoing reasons, we AFFIRM.