NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 2, 2007
Decided January 8, 2008

**Before**

Hon. FRANK H. EASTERBROOK, *Chief Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 06-4427

| | |
|---|---|
| PAUL JENKINS, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| *v.* | No. 05 C 7113 |
| LIFETIME HOAN CORPORATION, *Defendants-Appellee*. | George W. Lindberg, *Judge*. |

**O R D E R**

Paul Jenkins sold housewares to Wal-Mart for Lifetime Hoan Corporation, but was ultimately discharged. He then sued Lifetime claiming discrimination on the basis of sex and age. The district court granted Lifetime's motion for summary judgment on both theories of discrimination, and Jenkins now appeals. We affirm.

In July 1996 Lifetime hired Paul Jenkins, who was 59 years old at the time, to sell housewares to Wal-Mart. When Jenkins began his employment, Lifetime sold approximately $3 million worth of merchandise per year to Wal-Mart, but during the next seven years, Jenkins steadily increased Lifetime's sales to Wal-Mart to approximately $40 million.

In August 2002 a former Wal-Mart vice-president recommended that Lifetime hire Barbara Conklin, who was 45 years old and a salesperson from a competing company. Lifetime accepted this recommendation and hired Conklin to be the Wal-Mart team leader. According to Jenkins, once hired, Conklin immediately began to criticize him for his lack of computer skills. Conklin demanded that Jenkins communicate via email, though Jenkins claims he did not have a computer or an email address. At the time, Jenkins's son, also a Lifetime employee, would check Jenkins's email for him and respond as necessary. Conklin also began to implement changes encouraging employees to use a computer program that enabled sales to be made based on a better understanding of Wal-Mart's needs and consumption patterns.

Then, in October 2002 Conklin sent a memorandum to Evan Miller, the vice-president at Lifetime and Jenkins's supervisor, recommending that Jenkins be "reassigned or retired from the Wal-Mart Account." Two months later, Miller told Jenkins that he had to learn how to use the computer, and according to Jenkins, asked him, "Why don't you think about retiring?"

In January 2003 Jenkins attended a housewares convention in Chicago where he met Bill May, a vice-president at Wal-Mart, who allegedly told Jenkins, "Oh, you don't need any money. You should retire." Then, in that same month, Lifetime removed Jenkins from the Wal-Mart account and transferred him to selling close-outs, which are damaged products others have been unable to sell. This new position did not require the use of email, and his salary, including bonuses, dropped from $300,000 per year to $60,000 per year.

Upon reassigning Jenkins to sell close-outs, Lifetime gave him lists of potential clients and products to sell, but he could not make a sale. According to Jenkins he was unable to make a sale because Lifetime never gave him samples of the close-outs, despite the fact that he requested them. Jenkins's supervisor contended that Jenkins did not need samples of the close-outs to make a sale. The supervisor further maintained that he had several phone conversations with Jenkins to explain what the procedure would be for selling close-outs. Nevertheless, during the first five months at this position, Jenkins did not make a single sale or appointment to sell close-outs.

Lifetime then placed Jenkins on two weeks' probation and told him that it would terminate his employment if he did not show improvement. On May 23, 2003, Lifetime terminated Jenkins without giving him a severance package. According to Lifetime, Jenkins's responsibilities were assumed by Conklin and another female employee who was 32 years old at the time.

After Jenkins was terminated, he learned that Conklin had been having an affair with May, the vice-president at Wal-Mart who allegedly told Jenkins he needed to retire. Jenkins argues that Lifetime knew about the affair when it hired Conklin, but Conklin told Lifetime that the affair had ended prior to her taking the position. Some evidence, however, shows that Conklin lied about when the affair ended. In any event, Conklin left Lifetime in August 2003, though the parties dispute whether Lifetime terminated Conklin or whether she quit. Either way, Conklin received a generous severance package, which included monthly stipends of $10,000 for two years.

In December 2005 Jenkins filed suit, claiming that Lifetime discriminated against him on the basis of age and sex in violation of the Age Discrimination in Employment Act and Title VII of the Civil Rights Act of 1964. After a significant amount of discovery, Lifetime moved for summary judgment, which the district court granted. The district court found that there was no direct evidence of discrimination and that Jenkins had failed to show that Lifetime's legitimate non-discriminatory reason for terminating him was pretextual.

Jenkins contends that the district court improperly granted Lifetime's summary-judgment motion. We review the district court's grant of summary judgement de novo. *Sartor v. Spherion Corp.*, 388 F.3d 275, 277 (7th Cir. 2004). Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Jenkins first argues that the district court should not have granted summary judgment on his claim of sex discrimination. Jenkins maintains that Miller treated Conklin more favorably because of her sexual relationship with a vice-president at Wal-Mart. But even if Miller favored Conklin due to this relationship, it would not constitute discrimination against Jenkins because of his sex. As we have held, "A male executive's romantically motivated favoritism toward a female subordinate is not sex discrimination even when it disadvantages a male competitor of the woman." *Preston v. Wis. Health Fund*, 397 F.3d 539, 541 (7th Cir. 2005). A woman would be just as likely as a man to be disadvantaged by this type of favoritism. *Id.* The same principle applies here because any alleged favoritism to Conklin because of her relationship with May would have equally disadvantaged a man or a woman in Jenkins's position. Jenkins just happened to be a man. Therefore, the grant of summary judgment on the sex-discrimination claim was proper.

Turning to the age claim, Jenkins argues that the district court failed to consider his direct evidence of age discrimination. Although it appears that the district court did not consider Jenkins's alleged direct evidence, that error is harmless because Jenkins's evidence is insufficient to survive a motion for summary judgment. *See Davis v. Con-Way Transp. Central Express, Inc.*, 368 F.3d 776, 782 n.3 (7th Cir. 2004). Jenkins argues the district court ignored three remarks that allegedly show discrimination: (1) May's suggestion that Jenkins retire; (2) Conklin's suggestion that Jenkins be retired from the Wal-Mart account; and (3) Miller's remark in December 2002 that Jenkins should retire. To constitute direct evidence, these remarks must essentially amount to "an admission by the decision-maker that his actions were based upon the prohibited animus." *Rogers v. City of Chi.*, 320 F.3d 748, 753 (7th Cir. 2003). None of the alleged remarks meet this requirement.

First, May's remark is irrelevant because not only was he not Jenkins's supervisor, but he did not even work at Lifetime. *See Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005) (holding that remarks made by someone uninvolved in making employment decisions do not constitute direct evidence of discrimination). Second, even if the court construes Conklin's remark about Jenkins being "retired from the Wal-Mart account" as a comment on Jenkins's overall retirement, it would be insufficient to establish direct evidence of age discrimination because an employer's "suggestion of retirement would not alone give rise to an inference of discrimination." *Kaniff v. Allstate Ins. Co.*, 121 F.3d 258, 263 (7th Cir. 1997) (suggesting retirement, even when combined with other critical remarks, is not sufficient to constitute direct evidence of discrimination); *Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 714-15 (7th Cir. 1999) (commenting about early retirement is not direct evidence of discrimination). Finally, Miller's suggestion that Jenkins retire is insufficient to constitute direct evidence of discrimination for the same reason.

Jenkins also argues that he provided indirect evidence of age discrimination. Jenkins was replaced by Conklin, who was 45 years old at the time, and another employee who was 32 years old. A plaintiff proceeding under the indirect method of proving discrimination must show that he was meeting his employer's legitimate expectations, and Jenkins has failed to meet that burden. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973); *Hossack v. Floor Covering Assoc. of Joliet, Inc.*, 492 F.3d 853, 860 (7th Cir. 2007). Although Jenkins states that he was qualified for the job, he never disputes Lifetime's evidence that he refused to use email, did not comply with procedures for submitting appointment lists, and did not make any appointments during five months in his new assignment. Jenkins argues that his inability to make sales appointments was excusable because he had not been provided with adequate information regarding the close-outs. But that is insufficient to establish that Jenkins was meeting Lifetime's legitimate

expectations because it does not refute Lifetime's assertion that Jenkins refused to use email, did not comply with company procedures, and did not make any appointments. *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 753 (7th Cir. 2006) (holding that employee's evidence that he finished assignments failed to refute employer's evidence that employee did not timely complete assignments). Because these facts are undisputed and because there is no dispute that these are legitimate expectations, Jenkins has failed to make a prima facie case and cannot prove age discrimination using the indirect method.

This is enough to decide this case. But even if Jenkins could prove that he was meeting Lifetime's expectations, summary judgment would still be appropriate because he produced no evidence that Lifetime's asserted non-discriminatory reason for transferring him to a new position and terminating his employment was pretextual. In evaluating whether an employer's proffered reason is pretextual, this court's "inquiry is limited to whether there is a material factual dispute as to whether the employer honestly believed the stated, legitimate reasons for the adverse action." *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006).

According to Jenkins, Lifetime based its adverse employment decisions on Conklin's evaluations of his performance. Jenkins argues that because Conklin allegedly lied about having an affair, and because Lifetime relied on Conklin's opinion of his performance, Lifetime's asserted non-discriminatory reason was pretextual. This argument lacks merit because even when viewed in the light most favorable to Jenkins, the fact that Conklin lied about having an affair does not imply that Miller did not honestly believe that Jenkins had performance problems. Furthermore, even if Conklin's lie regarding the affair could support an inference that Conklin generally lacked credibility, this too would not establish pretext. *See EEOC v. Target Corp.*, 460 F.3d 946, 960 (7th Cir. 2006) (holding that allegations about an employer's lack of credibility, like Jenkins's vague assertion, "will not control"). Finally, Jenkins offers no evidence suggesting that Conklin's evaluation of him had any influence on the ultimate decision to discharge him. In fact, Jenkins does not dispute that Miller honestly believed that Jenkins was not performing his job adequately.

Jenkins also argues that Lifetime's reason for demoting and terminating his employment "shifted repeatedly" in Miller's interrogatories and deposition testimony and this suffices as evidence of pretext. *See Zaccagnini v. Chas. Levy Circulating Co.*, 338 F.3d 672, 676-77 (7th Cir. 2003). But Miller testified consistently that Jenkins had been demoted and terminated due to his lack of computer skills, failure to comply with company procedures, and failure to make appointments to sell close-outs. Because his answers were not inconsistent, this argument has no merit.

Finally, Jenkins offers Lifetime's statement to the Arkansas Unemployment Commission that "Jenkins performed as expected when assigned to Wal-Mart" as evidence that its reason for transferring him was pretextual. Jenkins, however, takes this statement out of context. The quoted text refers only to a question that asks, "Had the worker performed job duties satisfactorily in the past?" Throughout its answers, Lifetime stated that it transferred and eventually terminated Jenkins based on his "failure to meet minimum company requirements" and refusal to use email. Read in context, this evidence is insufficient to establish that Lifetime's asserted non-discriminatory reason was dishonest.

Accordingly, we AFFIRM the judgment of the district court.